**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **RMS TITANIC, INC. and** | |
| **PREMIER EXHIBITIONS, INC.,** | |
| **Plaintiffs,** | |
| **v.** | **1:13-cv-0625-WSD** |
| **THOMAS ZALLER, IMAGINE** | |
| **EXHIBITIONS, INC., a Nevada** | |
| **Corporation, IMAGINE** | |
| **EXHIBITIONS, PTE, LTD,** | |
| **IMAGINE EXHIBITIONS, INC., a** | |
| **Georgia Corporation, and TZ, INC.,** | |
| **a Georgia Corporation,** | |
| **Defendants.** | |

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss Plaintiffs'

Amended Complaint [24].

**I.    BACKGROUND**

A.    Procedural History

On February 26, 2013, Plaintiffs RMS Titanic, Inc. ("RMS Titanic") and

Premier Exhibitions, Inc. ("Premier"), both Florida corporations with their

principal place of business in Atlanta, Georgia, filed a complaint asserting claims

against Defendants Thomas Zaller ("Zaller"), Imagine Exhibitions, Inc., a Nevada

corporation, ("Imagine-Nevada"), and Imagine Exhibitions, PTE, LTD, a

Singapore corporation, (Imagine-Singapore") for, *inter alia*, Lanham Act violations, conversion, breach of contract, and fraud.  Plaintiffs are involved in staging a "museum quality" exhibition of the Titanic designed "to take visitors on a chronological journey through the life of the RMS Titanic, from the building of the ship, to life on board during its voyage to America, and finally to the ruins on the ocean floor."  (Compl. ¶¶ 7, 9.)  The gist of Plaintiffs' complaint is that Zaller, an American citizen and a Georgia resident who was once employed by Premier, negotiated with Premier in 2011 to stage a Titanic exhibition in Singapore, and then used Premier's intellectual property to stage his own Titanic exhibition in Macau, China, in 2012.  Plaintiffs also allege that Zaller's Titanic exhibition infringes the protected trade dress of Plaintiff's exhibition.

On May 6, 2013, Defendants moved to dismiss the complaint, including for lack of subject-matter jurisdiction over the Lanham Act claim and for lack of personal jurisdiction over the Nevada and Singapore defendant corporations.  On May 23, 2013, Plaintiffs filed an amended complaint, and named two more defendants:  a Georgia corporation also named Imagine Exhibitions, Inc. ("Imagine-Georgia") and a Georgia corporation named TZ, Inc. ("TZ").  Plaintiffs further allege in the amended complaint that all of the corporate defendants are merely alter egos of Zaller, and that the business operations of each of these

entities are managed in Atlanta, Georgia.  On June 17, 2013, Defendants once

again moved to dismiss this action, pursuant to Rules 12(b)(1), (2), (3), and (6),

arguing that this Court lacks subject-matter and personal jurisdiction, that Plaintiffs

have failed to state viable claims against the Defendants, and that the Northern

District of Georgia is an improper venue for Plaintiffs' claims to be heard.  The

Court now considers Defendants'[1] motion.

     B.    <u>Background Facts</u>

Plaintiffs allege the following facts, which the Court accepts as true at this

early stage of the litigation.  RMS Titanic and Premier are both Florida

corporations with their principal places of businesses in Atlanta, Georgia.  RMS

Titanic presents museum-style exhibitions of artifacts that it recovered, in its

capacity as salvor-in-possession, from the wreckage of the Titanic.  This recovery

occurred during eight research and recovery expeditions undertaken since the

Titanic's discovery in 1985.  RMS Titanic partners with various venues to stage its

exhibition, known as "Titanic . . . The Artifact Exhibition."  The exhibition is

designed to "take visitors on a chronological journey" from the building of the ship

---

[1] All of the claims are not asserted against all of the Defendants.  In moving to
dismiss, all of the Defendants raise grounds for dismissal, even if a claim is not
asserted against all of the Defendants.  The Court clarifies in its Order which
claims are asserted against which Defendants and whether the claim is dismissed.

to its ruin at the bottom of the Atlantic, and focuses on the "compelling human stories as best told through authentic artifacts and extensive room re-creations." (Am. Compl. ¶ 13.)  Visitors who engage the exhibit are provided with a "passenger ticket" with the name and personal information about one of the actual Titanic passengers.  (Id. ¶ 14.)

The overall design of the exhibition is substantially the same in each venue where it is staged.  Visitors walk through re-creations of the Titanic's hallways, cabins, and other rooms to simulate being present on the ship.  They experience "unique Titanic-related settings, such as standing on a virtual ocean floor amidst the wreckage and debris field."  (Id. ¶ 16.)  Several rooms are based on historical photographs of locations on the Titanic, including the "grand staircase," while other rooms were designed by RMS Titanic without historical reference.  Plaintiffs claim that the room designs are "novel and unique, and contain[] an original expression of ideas" subject to legal copyright protection.[2]  Plaintiffs further claim their exhibition contains several works that "are so novel, unique and distinct as to have become signature works which are readily recognized or associated" with

_____

[2] Plaintiffs do not assert any claims under the Copyright Act.  They apparently did not register, with the United States Copyright Office, any of the alleged original expressions described in the Complaint, although some materials and photographs have been registered.  (See Am. Compl. ¶ 20.)

Plaintiff's exhibition.  (Id. ¶ 19.)

Zaller is an American citizen and a resident of Georgia.[3]  He is a former employee of RMS Titanic, and Plaintiffs allege he is now the chief executive officer of Imagine-Nevada, Imagine-Georgia, Imagine-Singapore, and TZ.

On June 13, 2011, Zaller and TZ, representing a promoter in Singapore, negotiated an agreement to present Plaintiffs' Titanic exhibit in Singapore ("the Singapore Exhibition Agreement").  During the negotiations, Zaller asked Plaintiffs to provide him with confidential and proprietary information related to the design and layout of the Titanic exhibition.  Zaller asked for "the floor plan (in CAD[4] with elevations/ceiling heights) [and] photos" and "a CAD for the last 3 or 4 cities that the exhibition has been in."  (Id. ¶ 25.)  Plaintiffs claim that such confidential and proprietary information ordinarily was not shared with third parties, and so they refused to provide the information Zaller requested.  Zaller stated the information was necessary to stage the exhibit in Singapore and assured Plaintiffs that it would be used only for that purpose, (id. ¶¶ 25, 26).  Plaintiffs agreed to provide the information, but insisted that the Singapore Exhibition Agreement include representations and warranties designed to protect Plaintiffs'

_____

[3] At some point he lived in Singapore.

[4] The Court assumes this refers to "computer-aided design."

proprietary information.[5]  Relying on the representations and warranties in the agreement, and on Zaller's verbal assurances that he would use the information only to stage the Singapore exhibition, Plaintiffs delivered to Zaller and TZ the requested information, including "historical research, drawings, video footage, and photographs," "CAD files, graphic and text files, . . . floor plans, narratives, [and] designs for [Plaintiffs'] signature works," along with "digital storage devices such as compact discs and flash drives."[6]  (Id. ¶ 28.)

While Plaintiffs' exhibition in Singapore was open, Zaller and the other corporate Defendants, without Plaintiffs' knowledge or permission, contracted with a promoter in Macau, China, to present Defendants' own Titanic exhibit using the confidential information Plaintiffs had provided for the Singapore exhibition. Zaller's competing Titanic exhibition in Macau, called "Titanic . . . . The Exhibit," was "substantially similar" to Plaintiffs' exhibit, and included the same "design elements, room re-creations, signature works, photographs, and narratives."  (Id. ¶ 30.)  A comparison of the floor plans of the two exhibits showed that Zaller used, in the Macau exhibit, the same architectural plans, the same artifact and numbering

_____

[5] It appears the Singapore Exhibition Agreement was between only Plaintiffs and the Singapore promoter, who is not a defendant in this action.

[6] Plaintiffs thus argue that they provided Zaller with both intellectual and tangible property.

scheme, and nearly identical room "layouts, text and graphic panels, photographs, gobos,[7] lighting schemes, and color schemes" that were provided and used by Plaintiffs in their Titanic exhibit.  (Id. ¶ 31.)  Zaller also used the same font and lettering used in Plaintiffs' exhibit, used underwater video actually owned by Premier, and, in a marketing video for the Macau exhibit, Zaller used photos actually taken at the Singapore exhibit.  (Id.)

Defendants marketed Zaller's Titanic exhibit ("Zaller's Titanic Exhibit") to "other venues in and outside the United States, as well as on their websites created in the United States, in the media, and at industry shows in the United States."  (Id. ¶ 35.)  From October 13 – 15, 2012, Imagine-Georgia promoted Zaller's Titanic Exhibit at the Association of Science-Technology Centers Annual Conference in Columbus, Ohio.  (Id. ¶ 36(b).)  Plaintiffs allege that this association represents Plaintiffs' "core and target" customers.  (Id.)  Defendants also entered into an agreement with the National Geographic Society ("National Geographic"), with which Plaintiffs had partnered in the past, for National Geographic to sponsor Zaller's Titanic Exhibit.  Plaintiffs allege the sponsorship agreement was executed in Atlanta, Georgia.  (Id. ¶ 36(c).)

---

[7] The term "gobo" is unexplained.  Wikipedia provides that "the term 'gobo' has come to generally refer to any device which produces patterns of light and shadow or various pieces of equipment that go before a light."

Imagine-Georgia also promoted Zaller's Titanic Exhibit at the American Alliance of Museums Annual Conference in Baltimore, Maryland, held May 20 – 22, 2013.  (Id. ¶ 36(d).)  This association also forms a core of Plaintiffs' target audience.  (Id.)  Imagine Exhibitions, Inc.[8] operates a website, www.imagineexhibitions.com, which markets Defendants' various exhibitions, including Zaller's Titanic Exhibit.  (Id. ¶ 36(e).)

Plaintiffs claim they spent years and millions of dollars to gather historical information, assimilate it into narratives, create stories, draft text, and design and build their Titanic exhibit.  Defendants' Macau exhibit was prepared in a matter of a few months, opening in October, 2012.  Plaintiffs claim that, Defendants were able to compress the time to design their exhibit by wrongly using Plaintiffs' proprietary information.  On January 9, 2013, Plaintiffs' counsel sent to Defendants written notice that the Macau exhibit contained misappropriated intellectual property and constituted unfair competition, and demanded that Defendants cease and desist from infringing Plaintiffs' intellectual property and other rights.  Defendants ignored these notices, and Zaller's Titanic Exhibit

---

[8] It is unclear from the Amended Complaint which of the corporate Defendants actually operates and maintains this website.  The Court takes judicial notice that a detailed description of "Titanic The Exhibit," including links for a "sales presentation" in English and Chinese, is included on this website.

remained open in Macau until March 31, 2013.

      C.    <u>The Claims</u>

In this action, Plaintiffs assert claims for conversion (against Zaller and TZ) (Count I); breach of contract (against Zaller and TZ) (Count II); unjust enrichment (against all Defendants) (Count III); fraud and fraudulent inducement (against Zaller and TZ) (Count IV); trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a) (against all Defendants) (Count V); misappropriation of trade secrets (against Zaller and TZ) (Count VI); and to pierce the corporate veil (against Imagine-Nevada, Imagine PTE, Imagine Georgia and TZ) (Count VII).

## II.    DISCUSSION

Defendants' primary argument in favor of dismissing this action is that the Court lacks subject-matter jurisdiction over Plaintiffs' Lanham Act claim. Defendants argue that the alleged tortious acts occurred outside the United States and that exterritorial application of the Lanham Act is not permitted under the facts Plaintiffs have alleged.  Defendants also argue that Plaintiffs' claims for conversion are preempted by copyright law, that Plaintiffs claims for unjust enrichment and fraud are superseded by the Georgia Trade Secrets Act, that Plaintiffs fail to state a claim for breach of contract, that this Court lacks personal jurisdiction over some of the Defendants, and, finally, that this is not the proper

venue for Plaintiffs' case.  The Court considers each argument in turn.

A.     Whether the Court Has Subject-Matter Jurisdiction Over Plaintiffs
       Lanham Act Claim (Count V)

"Subject matter jurisdiction in federal court can be found under either

28 U.S.C. § 1331, federal question, or 28 U.S.C. § 1332, diversity jurisdiction."

Ware v. FleetBoston Fin. Corp., 180 Fed. Appx. 59, 63 (11th Cir. 2006).  Plaintiffs

do not, and cannot, assert diversity jurisdiction because Plaintiffs and Zaller are all

alleged to be Georgia citizens.[9]  Plaintiffs' basis for federal-question jurisdiction is

their claim under the Lanham Act and they assert this Court should exercise its

supplemental jurisdiction over their state law claims.  See 28 U.S.C. § 1367(a).

Defendants argue that this Court lacks jurisdiction over Plaintiffs' Lanham Act

claim or, alternatively, that Plaintiffs have failed to state a claim under the Lanham

Act.

1.     Legal Standard on a Motion to Dismiss for Lack of Subject-
       Matter Jurisdiction

Federal courts are courts of limited jurisdiction, and a federal court must

take care to ensure that it has jurisdiction for all cases that come before it.  Rembert

v. Apfel, 213 F.3d 1331, 1333-34 (11th Cir. 2000).  "[B]ecause a federal court is

_____

[9] "Diversity jurisdiction, as a general rule, requires complete diversity—every
plaintiff must be diverse from every defendant."  Palmer Hosp. Auth. of Randolph
Cnty., 22 F.3d 1559, 1564 (11th Cir. 1994).

powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." Smith v. GTE Corp., 236 F.3d 1292, 1299 (11th Cir. 2001).  Where, as here, subject-matter jurisdiction is challenged by a Rule 12(b)(1) motion, the court must evaluate whether the plaintiff has sufficiently alleged subject-matter jurisdiction.  Garcia v. Copenhaver, Bell & Assocs., 104 F.3d 1256, 1261 (11th Cir. 1997).  Rule 12(b)(1) of the Federal Rules of Civil Procedure permits litigants to move to dismiss when the court lacks jurisdiction over the subject matter of the dispute.  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure may be either a "facial" or "factual" jurisdictional attack.  Morrison v. Amway Corp., 323 F.3d 920, 924-25 n.5 (11th Cir. 2003).  A facial attack, such as the one asserted here, challenges subject matter jurisdiction on the basis of the allegations in the complaint.  Id.  In reviewing a complaint for a facial attack on subject matter jurisdiction, presumptive truthfulness attaches to the plaintiff's allegations, and the "court is

required 'merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction.'"  Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1233 (11th Cir. 2008).

### 2.  *Extraterritorial Application of the Lanham Act*

Defendants argue that the alleged tortious acts of which Plaintiffs complain all occurred outside the United States.  Defendants claim that, according to Plaintiffs' allegations, the acquisition of proprietary information occurred in Singapore, and that the misuse of this information occurred in Macau, China, where the competing Titanic exhibition was staged.  Defendants contend these allegations are beyond the reach of the Lanham Act, and thus there is no federal question jurisdiction here.

The Lanham Act, under appropriate circumstances, can be applied extraterritorially.  See Steele v. Bulova Watch Co., 344 U.S. 280 (1952).  In Bulova, the Supreme Court concluded that a United States company could sue a United States citizen for trademark infringement that occurred in Mexico under the Lanham Act.  344 U.S. at 285.  See also Int'l Café, S.A.L. v. Hard Rock Café Int'l, 252 F.3d 1274 (11th Cir. 2001).  In Bulova, the Supreme Court observed that counterfeit watches that were produced in Mexico had found their way into the United States, and were causing confusion among American consumers.  In

applying the Lanham Act to the facts of that case, the Supreme Court relied on

Congressional power to regulate the conduct of citizens of the United States, even

when they were abroad, 344 U.S. at 285–86, and to regulate foreign commerce, at

least when its effects were felt in the United States, id. at 286 – 87.  How to apply

the Lanham Act extraterritorially has evolved over time.

      The Second Circuit, following Bulova, set forth three factors to consider in

determining whether the Lanham Act can be applied beyond the boundaries of the

United States.  Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633 (2d Cir.

1956).  The Vanity Fair test indicates that extraterritorial application of the

Lanham Act is allowed when: 1) the defendant is a United States citizen; 2) there is

no conflict between the plaintiff's trademark rights under the law of the United

States and the foreign jurisdiction where the alleged infringement occurs; and 3)

the defendant's conduct has a "substantial effect on United States commerce."

Vanity Fair, 234 F.2d at 642.  These three factors are balanced, with the weight to

be given to each determined on a case-by-case basis.  The Vanity Fair court noted,

however, that "the absence of one of the [first two] factors might well be

determinative and that the absence of both is certainly fatal."  Id. at 643.  The third

factor, the effect on United States commerce, appears prominently to address "the

ultimate purpose of the Lanham Act [which is]. . . is to encourage domestic sellers

to develop trademarks to assist domestic buyers in their purchasing decisions."
Atl. Richfield Co. v. Arco Globus Int'l Co., Inc., 150 F3d 189, 193 (2d Cir. 1998).
The Second Circuit noted that it has "never applied the Lanham Act to
extraterritorial conduct absent a substantial effect on United States commerce." Id.
at n.4.

Other Circuits have modified the Vanity Fair test, at least with respect to the
magnitude of the effect on American commerce required to permit an
extraterritorial application of the Lanham Act.  For instance, the Fourth Circuit
requires a "significant effect" on United States commerce, rather than a
"substantial effect," Nintendo of Am., Ltd. V. Aeropower Co., 34 F.3d 1274,
1278 – 79 (4th Cir. 1994), and the Fifth Circuit required only "some effect," Am.
Rice, Inc. v. Arkansas Rice Growers Coop. Ass'n, 701 F.2d 408, 414 & n.8 (5th
Cir. 1983).  In Int'l Café, S.A.L. v. Hard Rock Café Int'l, 252 F.3d 1274 (11th Cir.
2001), our Circuit cited the Vanity Fair case with approval, but did not explicitly
adopt the Second Circuit's formulation of the test required by the Supreme Court's
holding in Bulova.  Id. at 1278.  In International Café, the Circuit appeared to
apply Bulova directly, but used the "substantial effect" on United States commerce
test applied in Vanity Fair.

The First Circuit recently considered extraterritorial application of the

14

Lanham Act in <u>McBee v. Delica Co., Ltd.</u>, 417 F.3d 107 (1st Cir. 2005).  In doing so, it disaggregated the three prongs of the <u>Vanity Fair</u> test, and developed an analytical structure to apply when considering the question of subject-matter jurisdiction, in which different weight is required to be given to each <u>Vanity Fair</u> test prong.  For example, when the defendant is an American citizen, "a separate constitutional basis for jurisdiction exists for control of activities, even foreign activities."  <u>McBee</u>, 417 F.3d at 111.  The First Circuit next notes that when the Lanham Act is applied against a foreign defendant's infringing sales in the United States, subject-matter jurisdiction is present.  <u>Id.</u>  When, however, a plaintiff seeks to apply the Lanham Act to a foreign defendant's foreign activities, the First Circuit held that subject-matter jurisdiction "is proper only if the complained-of activities have a substantial effect on United States commerce, viewed in light of the purposes of the Lanham Act."  <u>Id.</u>  "If this 'substantial effects' question is answered in the negative, then the court lacks subject-matter jurisdiction over the defendant's extraterritorial acts; if it is answered in the affirmative, then the court possesses subject-matter jurisdiction."  <u>Id.</u>

　　　　Finally, the <u>McBee</u> court, in determining whether jurisdiction is present, rejected that United States courts must consider whether there is any conflict with the laws of foreign nations.  <u>Id.</u>  "Comity considerations, including potential

conflicts with foreign trademark law, are properly treated as questions of whether a court should, in its discretion, decline to exercise subject matter jurisdiction that it already possesses," but does not impact whether jurisdiction is present in the first place.  Id.

The McBee analytical framework thus requires a court to ask first whether the defendant is an American citizen or has engaged in conduct within the United States.  If not, the court must apply the "substantial effects on United State commerce" tests as the "sole touchstone to determine jurisdiction."  Id. at 121.[10]

The reasoning and analysis in McBee is analytically sound and a thorough application of the development of the circumstances in which the Lanham Act may be extraterritorially applied.  See Bulova, 344 U.S. at 285.  The Court believes that our Circuit would adopt the framework announced in McBee as an appropriate

---

[10] In requiring a "substantial effect" on United States commerce as a necessary prerequisite for any application of the Lanham Act to a foreign defendant's activities outside the United States, the First Circuit relied on Supreme Court decisions in the antitrust context, which arguably reflect more recent evolution of the issue of extraterritorial application of United States statutes regulating commerce.  See id. at 119 (citing Hartford Fire Ins. Co. v. California, 509 U.S. 764 (1993) (holding Sherman Act jurisdiction over was present over a foreign defendant whose 'conduct was meant to produce and did in fact produce some substantial effect in the United States.')).  Absent a showing of a substantial effect on United States commerce, "Congress has little reason to assert jurisdiction over foreign defendants who are engaging in activities that have no substantial effect on the United States, and courts, absent an express statement from Congress, have no good reason to go further in such situations."  Id. at 120.

framework for considering whether courts have subject-matter jurisdiction to extraterritorially apply the Lanham Act.  For that reason, McBee is applied here.

In this action, Plaintiffs have alleged that all of the Defendants are United States citizens, with the sole exception of Imagine-Singapore, which is alleged to be a Singapore corporation.  With respect to the Defendants that are United States citizens, the Court finds that it has subject-matter jurisdiction over Plaintiffs' Lanham Act claim.  Like Bulova, this case implicates Congress's "broad power to regulate the conduct of its citizens in foreign countries."  Vanity Fair, 234 F.2d at 642.  In addition to the allegations that Defendants' exhibit in Macau has infringed on Plaintiffs' protected trade dress, Plaintiffs also have alleged that Defendants marketed their infringing exhibition in the United States, both on the internet and by targeting Plaintiffs' customers at trade shows and conferences, creating consumer confusion about the origination, sponsors and operators of the competing Titanic exhibits offered by Plaintiffs and Defendants.  (See Am. Compl. ¶ 36.) Plaintiffs thus alleged that United States citizens have engaged in infringing activity in the United States in violation of the Lanham Act.  The Court concludes it has subject-matter jurisdiction over Plaintiffs' claim against the United States domestic defendants, specifically Zaller, Imagine-Nevada, Imagine-Georgia, and TZ.

With respect to Imagine-Singapore, a foreign defendant, the Court can only exercise jurisdiction over it if its conduct outside the United States had a substantial effect on United States commerce.  McBee, 417 F.3d at 120.  Here, Plaintiffs allege conduct by Imagine-Singapore, but that conduct occurred outside the United States.  Plaintiffs do not allege that Imagine-Singapore marketed Zaller's exhibition in the United States, had any interaction with domestic consumers, caused consumer confusion in the United States, or damaged Plaintiffs' reputation in the United States.  Imagine-Singapore is alleged to have been involved in the staging of Zaller's allegedly-infringing Titanic exhibit in Macau.  Plaintiffs do not allege that Imagine-Singapore engaged in any conduct other than in Macau.  Plaintiffs also do not allege that the Macau exhibition itself or that Imagine-Singapore, as an entity, affected United States commerce, let alone in a substantial way.  Even though Plaintiffs assert that Imagine-Singapore profited from the Macau exhibition, financial gain by an infringing defendant alone is insufficient to show a substantial effect on United States commerce.  See Int'l Café, S.A.L. v. Hard Rock Café Int'l, 252 F.3d 1274, 1278 (11th Cir. 2001).  Plaintiffs do not allege that Imagine-Singapore is continuing to infringe Plaintiffs' intellectual property, or that there is any expectation of Imagine-Singapore having

a substantial effect on United States commerce in the future.[11]  The Court

concludes that Plaintiffs' allegations are insufficient to support an extraterritorial

application of the Lanham Act over Imagine-Singapore.

Plaintiffs argue that the Court should ignore Imagine-Singapore's formal

status as a foreign defendant, and instead exercise jurisdiction over Imagine-

Singapore as if it were a United States citizen.  Plaintiffs contend this is

appropriate because Imagine-Singapore is merely Zaller's alter ego.  To support

their alter-ego theory, Plaintiffs allege that Imagine-Singapore has an office in

Atlanta, from which it performs accounting and administrative functions, and that

Zaller is the company's sole shareholder, president, and chief executive officer.

(Am. Compl. ¶¶ 6, 8.)  Plaintiffs do not cite any case law or authority supporting

the extraterritorial application of a United States statute to a foreign defendant on

the basis of an alter-ego theory.

Under Georgia law, "[t]o establish the alter ego doctrine it must be shown

(1) that the stockholders' disregard of the corporate entity made it a mere

instrumentality for the transaction of their own affairs; (2) that there is such unity

---

[11] Plaintiffs note that the Macau exhibition was sponsored by the National Geographic Society, which formerly had partnered with Plaintiffs on other projects.  (Am. Comp. ¶ 36(c).)  To the extent Plaintiffs allege that the Macau exhibition affected one of its professional relationships, the Court finds this to be too insubstantial an effect to form a basis for asserting jurisdiction.

of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and (3) to adhere to the doctrine of corporate entity would promote injustice or protect fraud." McLean v. Cont'l Wingate Co., 212 Ga. App. 356, 359, 442 S.E.2d 276, 279 (1994) (quoting Custom Lighting & Decorating, Ltd. v. Hampshire Co., 204 Ga. App. 293, 295-96, 418 S.E.2d 811, 814 (1992)). To justify piercing the corporate veil, "'the plaintiff must show [that] the owner abused the corporate form by disregarding the separateness of legal entities by commingling [funds] on an interchangeable or joint basis or confusing the otherwise separate properties, records, or control.'" Rasheed v. Klopp Enters., Inc., 276 Ga. App. 91, 95 n. 4, 622 S.E.2d 442, 446 n. 4 (2005) (citation omitted).

Defendants assert that Plaintiffs have failed to allege in the Amended Complaint a sufficient factual basis to support the alter-ego theory. The Court agrees. Defendants' reliance on alter-ego theory to find jurisdiction over Imagine-Singapore is an odd application of the theory. Essentially, Defendants argue that Zaller is Imagine-Singapore's alter ego and that the Court should pierce the corporate veil to hold it liable as if it were really a United States corporation. In other words, Defendants ask the Court to apply Zaller's citizenship to Imagine-Singapore. This is a misapplication of the alter-ego theory and it is illogical. See Section II.G.2 of this Opinion. Plaintiffs' Amended Complaint also includes only

conclusory statements and broad characterizations to assert its alleged conclusion that Imagine-Singapore is a "legal fiction," (id. ¶ 90), that Zaller "failed to adhere to required corporate formalities," (id.), "abused the corporate form," (id. ¶ 91), and "does not maintain any distinctions as to these entities functions and operations." (Id.) These summary allegations and legal conclusions do not offer well-pleaded facts to support a claim that Zaller used Imagine-Singapore's corporate form for fraudulent or improper purposes, sufficient to ignore it as an entity.[12] See Heartland Barge Mgmt., LLC v. Dixie Pellets, LLC, 2010 WL 703183 (S.D. Ala. Feb. 22, 2010). See also Innotex Precision Limited v. Horei Image Products, Inc., 2009 U.S. Dist LEXIS 117992 (N.D. Ga. Dec. 17, 2009) (holding that "threadbare recitations" that individual defendants disregarded corporate entities and used them for transacting personal business, were not supported by factual allegations and are not entitled to weight on a motion to dismiss).

Plaintiffs' alter-ego allegations are insufficient to permit the Court to exercise jurisdiction over Imagine-Singapore, and are otherwise a misapplication of the alter-ego theory. The Court concludes that it lacks subject-matter

---

[12] In reaching its conclusion in this jurisdictional analysis whether an alter-ego claim is sufficiently asserted, the Court conducts its analysis using the motion to dismiss standard set out in Section II.B.1 of this Opinion and Order.

jurisdiction over Plaintiffs' Lanham Act claim asserted against the foreign

defendant Imagine-Singapore.[13]  Defendants' motion to dismiss Plaintiffs' Lanham

Act claim against Imagine-Singapore is required to be granted.

    B.    <u>Whether Plaintiffs Have Failed to State a Lanham Act Claim</u>

    Defendants next argue that Plaintiffs have failed to state a claim for trade

dress infringement under the Lanham Act.

        1.    *Legal Standard on a Motion to Dismiss for Failure to State a*
              *Claim*

    The law governing motions to dismiss pursuant to Rule 12(b)(6) is well-

settled.  Dismissal of a complaint is appropriate "when, on the basis of a

dispositive issue of law, no construction of the factual allegations will support the

cause of action."  <u>Marshall County Bd. of Educ. v. Marshall County Gas. Dist.</u>,

992 F.2d 1171, 1174 (11th Cir. 1993). The Court accepts the plaintiff's allegations

as true, <u>Hishon v. King & Spalding</u>, 467 U.S. 68, 73 (1984), and considers the

---

[13] Having found it lacks subject-matter jurisdiction over Singaporean defendant,
the Court does not need to address comity questions.  <u>McBee</u>, 417 F.3d at 111.
The Court notes, however, that Defendants argued that the Singaporean courts
were the more appropriate forum to address Plaintiffs' allegations, and brought to
the Court's attention a declaratory judgment action filed in the High Court of the
Republic of Singapore by Kingsmen Exhibits PTE Ltd., evidently a partner in the
Macau exhibition.  The Singaporean court dismissed that action for lack of
jurisdiction on August 26, 2013.

allegations in the complaint in the light most favorable to the plaintiff.  Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007).  Ultimately, the complaint is required to contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  To state a claim for relief that is plausible, the plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  Id. (citing Twombly, 550 U.S. at 557).  "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims."  Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1263 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.").

When considering a motion to dismiss, the court normally is required to limit itself to consideration of the allegations of the complaint and documents attached thereto.  Fed. R. Civ. P. 12(b)(6).  However, the court may take judicial notice of

reliable official public documents.  Garfield v. NDC Health Corp., 466 F.3d 1255,

1260 n.2 (11th Cir. 2006).

>    2.    *Trade Dress Infringement*

Plaintiffs allege a claim for trade dress infringement.[14]  To state a claim for

trade dress infringement under the Lanham Act, a plaintiff must allege:  1) that the

product design of the two products is confusingly similar; 2) the features of the

product design are primarily non-functional; and 3) the product design is inherently

distinctive or has acquired secondary meaning.  Dippin' Dots, Inc. v. Frosty Bites

Distrib., LLC, 369 F.3d 1197, 1202 (11th Cir. 2004).  Defendants argue that

Plaintiffs' alleged trade dress is not distinctive, and that Plaintiffs summarily assert

legal conclusions, without factual support, that their Titanic exhibition is inherently

distinctive.  Defendants further argue that any similarity between the Titanic

exhibitions is purely functional, that any designer of a Titanic exhibit would seek

to accurately portray the ship, and that Plaintiffs do not have the right to contend

"they alone own the look, feel, and experience of the Titanic."  (Defs.' Br. in Supp.

at 11.)  Finally, Defendants argue that Plaintiffs have failed to allege any consumer

confusion resulting from the Macau exhibition, and because the exhibits were

---

[14] This is the only Lanham Act claim Plaintiffs address in responding to
Defendants' motion to dismiss.  To the extent Plaintiffs intended to assert other
Lanham Act claims, they are deemed abandoned.

never offered in the same country, and thus not presented to common markets, consumers could not have been confused or associated a trade dress with one of the other of the two Titanic exhibitions.

a.   Distinctiveness

Plaintiffs allege that their protected trade dress includes "the total image and overall appearance" of their exhibit, including "size, shape, color or color combinations, lighting, design, texture, graphics, photographs, and narratives." (Am. Comp. ¶ 70).  Plaintiffs describe their trade dress to include the font and lettering style of the exhibition name, the room choice and placement, lighting patterns on the floor, a "star drop" lighting curtain, and the design and placement of artifacts throughout the exhibit.  (Pls.' Br. in Opp. at 7.)  Plaintiffs allege that these specific features are unique to and have come to be associated with their Titanic exhibit – that is, Plaintiff's Titanic exhibit designs and features are "inherently distinctive or [have] acquired secondary meaning."  Dippin' Dots, 369 F.3d at 1202.  Having evaluated the particular facts alleged by Plaintiffs to support that their exhibit was distinctive or acquired secondary meaning, the Court finds that Plaintiffs have adequately and plausibly alleged distinctive trade dress.

b.   Non-functional

Plaintiffs argue that at this stage of the litigation, they are merely required to

allege their trade dress is non-functional.  The Court agrees.  Defendants argue that Titanic exhibits will tend to look alike.  That, to a degree, certainly seems reasonable, but it is a question of fact the Court does not resolve on a motion to dismiss.  Plaintiffs have alleged that their trade dress includes certain unique design elements that are non-functional, including the font and lettering of their exhibition and specific lighting patterns, and this is a sufficient, plausible allegation of the non-functional element of a trade-dress claim.

c.     Confusion

Plaintiffs allege that Defendants continue to market their competing Titanic exhibit in the United States, including on the internet, to various venues where Plaintiffs also seek to operate.  Plaintiffs also allege that Defendants promoted their exhibit at trade shows and conferences where Plaintiffs target consumers are in attendance, and marketed the Zaller Titanic Exhibit on the internet to all corners of the world.  Plaintiffs have also sufficiently and plausibly alleged consumer confusion.

The Court concludes that Plaintiffs have adequately pleaded a plausible claim for trade dress infringement, and Defendants' motion to dismiss for failure to state a claim is required to be denied.  See Iqbal, 129 S. Ct. at 1949.

C.      Preemption of Conversion Claim

Defendants next argue that Plaintiffs' claim against Zaller and TZ for

conversion is preempted by federal copyright law, which provides the exclusive

remedy for rights that fall within its scope of protection.  As a result, Defendants

argue, Plaintiffs' state-law claim for conversion is required to be dismissed.

17 U.S.C. § 301(a) provides

> On and after January 1, 1978, all legal or equitable rights that are
> equivalent to any of the exclusive rights within the general scope of
> copyright as specified by section 106 in works of authorship that are
> fixed in a tangible medium of expression and come within the subject
> matter of copyright as specified by sections 102 and 103, whether
> created before or after that date and whether published or
> unpublished, are governed exclusively by this title. Thereafter, no
> person is entitled to any such right or equivalent right in any such
> work under the common law or statutes of any State.

17 U.S.C. § 301.  In determining whether a state-law cause of action is preempted,

courts in this Circuit apply a two-pronged test, deciding "whether the rights at

issue fall within the 'subject matter of copyright' set forth in sections 102 and 103

and whether the rights at issue are 'equivalent to' the exclusive rights of section

106." Crow v. Wainwright, 720 F.2d 1224, 1225-26 (11th Cir. 1983).  The rights

at issue are not equivalent if "additional elements must be proven."  Howard v.

Sterchi, 725 F. Supp. 1572, 1579 (N.D. Ga.1989) (O'Kelley, J.).  See also PHA

27

Lighting Design, Inc. v. Kosheluk, 2010 WL 1328754 (N.D. Ga. Mar. 30, 2010)
(Forrester, J.).

Copyright protection extends, under Sections 102 and 103 of the Copyright
Act, to "original works of authorship fixed in any tangible medium of expression
. . . from which they can be perceived, reproduced, or otherwise communicated,
either directly or with the aid of a machine or device."  17 U.S.C. § 102.  Works of
authorship include, *inter alia*, literary works, pictorial, graphic and sculptural
works, motion pictures and other audiovisual works, sound recordings, and
architectural works.  Id.

Defendants note that Plaintiffs' have alleged that a substantial portion of
their Titanic exhibit is "subject to legal protection under the Copyright Act."  (Am.
Compl. ¶ 17.)  Plaintiffs specifically assert that their Titanic exhibit "when viewed
as a whole, and as a collection of copyrightable works, contains an original
expression of ideas fixed in a tangible medium subject to legal protection under the
Copyright Act."  (Id. ¶ 18.)  In their submission on Defendants' motion, Plaintiffs
concede that property alleged to have been converted is copyrightable material, but
argue they also alleged the conversion of tangible property and otherwise non-
copyrightable intellectual property and business information.  (Pls. Br. in Opp. at
12 – 13.)  Plaintiffs contend their conversion claims with respect to this

unspecified property should survive Defendants' motion.

Plaintiffs fail to identify any intangible property that is outside of the copyright laws.  Section 102(b) of the Copyright Act identifies what cannot be copyrighted:  "In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."  17 U.S.C. § 102(b).  Plaintiffs did not allege that Defendants converted "ideas" or "procedures."  They allege instead that Plaintiffs' floor plans and room layouts, artifact arrangements, lighting designs, architectural plans, photographs, texts, narratives, and videos were wrongfully converted.  This intellectual property, whether actually copyrighted or not, is certainly within the subject matter of copyright.  The Court agrees, therefore, that Plaintiffs' claim for conversion of such intangible property, even if embodied in a tangible format such as diagrams or electronic media, is preempted by federal copyright law.  Plaintiffs' state-law claims for conversion of this property are required to be dismissed.[15]

Plaintiffs attempt to indentify the tangible property they allege that

---

[15] The Court also notes that a claim for conversion of intangible property does not exist under Georgia law, see S. Cellular Telecom, Inc. v. Banks, 208 Ga. App. 286, 290 (1993), which also requires these claims to be dismissed.

Defendants converted: "digital storage devices such as compact discs and flash drives . . . historical research, drawings, video footage, and photographs" that belonged to Plaintiffs.  (Am. Compl. ¶ 28.)  Plaintiffs appear to assert a conversion claim for the tangible items *through which* it transmitted its copyrightable intangible property to Defendants, although Plaintiffs do not allege that these items were expected to be returned.  It is unclear from Plaintiffs' pleading whether the "historical research, drawings, video footage, and photographs" were physical items, also expected to be returned to Plaintiffs, or digital copies of information subject to copyright, or something else.  Based on the allegations made, the Court determines Plaintiffs have not sufficiently alleged a claim for conversion.

A claim for conversion of tangible property is not preempted by the Copyright Act, but Plaintiffs here have not sufficiently alleged facts to support a conversion claim for tangible property, that is otherwise non-copyrightable property, and thus the motion to dismiss the conversion claim against Zaller and TZ is required to be granted.[16]

D.   Georgia Trade Secrets Act and Preemption of Unjust Enrichment and Fraud Claims

---

[16] If discovery shows that Plaintiffs' have a claim for conversion of tangible property, Plaintiffs may move to amend its complaint provided the motion is timely and otherwise appropriate at the time it is made.

Defendants next argue that Plaintiffs' claims for misappropriation of proprietary information asserted in different forms against all Defendants, whether couched as claims for conversion, unjust enrichment, or fraud, are all superseded by the Georgia Trade Secrets Act (GTSA). The GTSA is aimed at preventing the misappropriation of trade secrets, which are defined as:

> Information, without regard to form, including, but not limited to, technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential customers or suppliers which is not commonly known by or available to the public and which information:

> (A)   Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

> (B)   Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

O.C.G.A. § 10–1–761(4). The GTSA "supersede[s] conflicting tort, restitutionary, and other laws of this state providing civil remedies for misappropriation of a trade secret." O.C.G.A. § 10–1–767(a). The GTSA does not supersede "[o]ther civil remedies that are not based upon misappropriation of a trade secret." O.C.G.A. § 10–1–767(b)(2). In Diamond Power International, Inc. v. Davidson, 540 F. Supp.

2d 1322 (N.D. Ga. 2007) (Story, J.), this court, interpreting the GTSA, held that conflicting state law claims are superseded by the GTSA even where some of the misappropriated information qualified as a trade secret and some did not.  See also PHA Lighting Design, Inc., 2010 WL 1328754 at *10 – 11.

Plaintiffs appear to concede that their claims for conversion and unjust enrichment[17] with respect to their intangible property are superseded by the GTSA. (See Pls.' Br. in Opp. at 14 – 15.)   Plaintiffs asserted a claim under the GTSA with respect to their intangible property, and the Court finds Plaintiffs' redundant claims for conversion and unjust enrichment based on intangible property to be superseded by the GTSA, and thus are required to be dismissed.[18]

Defendants also argue, without sound authority, that Plaintiffs' fraud and fraudulent inducement claims also are superseded by the GTSA.  A claim for fraud, which involves willful misrepresentation or deception, may be viable even if the allegedly-misappropriated information was a trade secret or a public record. See JarAllah v. Schoen, 243 Ga. App. 402, 403-04, 531 S.E.2d 778, 780 (2000)

---

[17] To the extent Plaintiffs seek to assert a claim for unjust enrichment based on Defendants' receipt of tangible property, this claim is not adequately alleged and is required to be dismissed.  Twombly, 550 U.S. at 570; Iqbal, 129 S. Ct. at 1949.

[18] The Court already concluded that Plaintiffs conversion claim for intangible property was preempted by the Copyright Act and, on that basis as well, is required to be dismissed.

(listing elements for fraud in Georgia); see also Hecny Transp., Inc. v. Chu, 430

F.3d 402, 405 (7th Cir. 2005) (Easterbrook, J.) (evaluating the preemptive effect of

the Illinois Trade Secrets Act on fraud claims, and holding that "[t]his is not a

close question.  An assertion of trade secret in a customer list does not wipe out

claims of theft, fraud, and breach of the duty of loyalty that would be sound even if

the customer list were a public record.").  Defendants' motion to dismiss Plaintiffs'

claims for fraud and fraudulent inducement asserted against Zaller and TZ, on the

ground that they are preempted, is denied.

        E.      Failure to State Breach of Contract Claim

        Defendants contend that Plaintiffs failed to plead, with sufficient detail, the

existence of a contract between Plaintiffs and Zaller and TZ, and that Plaintiffs'

claim that Zaller and TZ breached an agreement to keep Plaintiffs' proprietary

information confidential should be dismissed.  The Court disagrees.  Plaintiffs'

allegations include a description of negotiations with Zaller, which took place

between November 22, 2010, and June 16, 2011, during which Zaller requested

access to information that Plaintiffs' considered, and told Zaller was, proprietary.

Plaintiffs describe their initial reluctance to distribute this information, Zaller's

repeated assurances that the information would be kept strictly confidential and

used only to stage the Titanic exhibit in Singapore, and that the parties agreed to

include various representations and warranties in the Singapore Exhibition

Agreement. [19]  (Am. Compl. ¶¶ 22 – 28.)  Plaintiffs thus allege a mutual exchange

in which they agreed to make disclosures to stage the Singapore exhibition and

Zaller agreed to abide by certain restrictions on the use of the disclosed

information.  These allegations sufficiently allege an oral contract between Zaller

and Plaintiffs.

Defendants next argue that any oral contract with Zaller is unenforceable

because it violates the statute of frauds.  Under the statute of frauds, agreements

that are "not to be performed within one year from the making thereof" must be in

writing.  O.C.G.A. § 13-5-30(5).  Defendants argue that because the alleged

obligation to keep Plaintiffs' information confidential is on-going and lasting more

than a single year, the contract was required to be in writing.  Because it was not,

Defendants argue the oral contract is unenforceable.

Plaintiffs have alleged that the oral contract with Zaller "would be

performed in less than a year," (Am. Compl. ¶ 48), presumably referring to the fact

that the exhibition in Singapore would have opened and closed within that time.  If

---

[19] Zaller and the other Defendants evidently were not party to the Singapore
Exhibition Agreement, the written contract between Plaintiffs and the Singapore
promoter which included protections for Plaintiffs' allegedly proprietary
information.  (See Am. Compl. ¶¶ 27, 28.)

there is a possibility that performance may be completed within a year, the contract does not run afoul of the statute of frauds.  Henry v. Blankenship, 275 Ga. App. 658, 661 (2005) (citing Klag v. Home Ins. Co., 116 Ga. App. 678, 687 (1967) (noting that possibility of performance within one year dispenses with the necessity that the contract be in writing)).

The nature of the agreement Plaintiffs allege here is that when Plaintiffs agreed to provide the confidential, proprietary information Zaller requested, Zaller agreed not to disclose it.  The facts do not state or support that Plaintiffs sought a short-term – less than one year – agreement against disclosure.  In any event, the Court is not required, at this stage, to determine the limits of the alleged agreement between Plaintiffs and Zaller.  Plaintiffs alleged there was an oral agreement, that it was expected to be performed within a year, and that Zaller breached that agreement within that one-year period.[20]  These allegations are sufficient to state a claim for breach of agreement, and Defendants' motion to dismiss the breach of contract claim against Zaller and TZ is required to be denied.

F.    Pleading Fraud Claims

Defendants next argue that Plaintiffs have failed to plead with sufficient

---

[20] The Court anticipates that the agreement was not one of less-than-one-year duration and Zaller may at a later time move to dismiss this claim if it is not supported by the facts.

particularity their claims for fraud and fraudulent inducement against Zaller and

TZ.  Complaints that allege fraud must meet the heightened pleading standards of

Federal Rule of Civil Procedure 9(b), which requires that the circumstances

constituting fraud must be stated with particularity.  "A complaint satisfies Rule

9(b) if it sets forth precisely what statements or omissions were made in what

documents or oral representations, who made the statements, the time and place of

the statements, the content of the statements and manner in which they misled the

plaintiff, and what benefit the defendant gained as a consequence of the fraud."  In

re Theragenics Corp. Sec. Litig., 105 F. Supp. 2d 1342, 1347 (N.D.Ga. 2000)

(citing Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1371

(11th Cir.1997)).

In Georgia, to adequately plead a claim for fraud, including fraudulent

inducement, a plaintiff must allege: (i) a false representation; (ii) scienter; (iii)

intent to induce the plaintiff to act or refrain from acting; (iv) justifiable reliance;

and (v) damage proximately caused by the representation.  See JarAllah v. Schoen,

243 Ga. App. 402, 404, 531 S.E.2d 778, 780 (2000).  Plaintiffs allege that Zaller

promised he would keep Plaintiff's proprietary information confidential, did not

intend to do so, and made this false representation for the purpose of convincing

Plaintiffs to disclose their confidential information so that Zaller could stage a

36

competing Titanic exhibition in Macau.  Plaintiffs claim that their reliance on

Zaller's representations was reasonable, and that they were damaged by his false

representations.  Plaintiffs' allegations are adequate to meet the heightened-

pleading requirement of Rule 9(b).

   Plaintiffs' allege that Zaller's fraudulent representation was a promise to

keep Plaintiff's proprietary information confidential, a promise Zaller did not

intend to keep.[21]  A promise about a future event generally cannot form the basis of

a claim for fraud.  "Fraud cannot consist of mere broken promises, expressions of

opinion, unfulfilled predictions or erroneous conjecture as to future events."  Allen

v. Columbus Bank & Trust Co., 244 Ga. App. 271, 277, 534 S.E.2d 917, 924 (Ga.

App. 2000).  See also Cowart v. Gay, 223 Ga. 635, 636 (1967) ("[T]he mere failure

to comply with a promise to perform an act in the future is not fraud in a legal

sense.").  There is an exception, however, for promises made without a present

intent to perform because the promise is essentially a false statement of material

fact.  See Mecca Const., Inc. v. Maestro Investments, LLC, 320 Ga. App. 34, 42,

739 S.E. 2d 51, 59 (Ga. App. 2013).  See also Cowart, 223 Ga. at 636 ("[W]hen the

failure to perform the promised act is coupled with the present intention not to

---

[21] Plaintiffs appear to allege that Zaller made these representations in his individual capacity and on behalf of TZ.

perform, fraud, in the legal sense, is present.  This is known as inceptive fraud, and is sufficient to support an action for cancellation of a written instrument.").

Plaintiffs' allegations form a basis for a claim for fraudulent inducement. "To establish a claim for fraud in the inducement, . . . a plaintiff must prove both that the defendant failed to perform a promised act and that the defendant had no intention of performing when the promise was made."  Nash v. Roberts Ridge Funding, LLC, 305 Ga. App. 113, 116, 699 S.E.2d 100 (2010).  "In general, a party alleging fraudulent inducement to enter a contract has two options: (1) affirm the contract and sue for damages from the fraud or breach; or (2) promptly rescind the contract and sue in tort for fraud."  Megel v. Donaldson, 288 Ga. App. 510, 515, 654 S.E.2d 656 (2007).

Plaintiffs here have asserted claims for both breach of contract and for fraud. Although "[i]t can not be said that merely affirming the contract by the defrauded party will necessarily deprive him of the right to sue for damages for the fraud inducing him to make the contract, as the right to affirm the contract and the right to sue for damages for the fraud coexist," Reininger v. O'Neill, 316 Ga. App. 477, 481 – 82, 729 S.E.2d 587, 591 (Ga. App. 2012), Plaintiffs are not entitled to recover on both theories of liability.  See Tankersley v. Barker, 286 Ga. App. 788, 790, 651 S.E.2d 435, 438 (Ga. App. 2007) (noting that plaintiff was not required to

elect remedy prior to submission to jury, but could not recover on both breach of contract and fraud claims if fraud related purely to the inducement to enter into the contract).  Plaintiffs have adequately alleged a claim for fraud in the inducement against Zaller and TZ, and Defendants' motion to dismiss the fraud claim is required to be denied.

> G.   Whether the Court Has Personal Jurisdiction Over the Defendants

Defendants next argue that this Court lacks personal jurisdiction over Defendants Imagine-Singapore and Imagine-Nevada, neither of which is a Georgia citizen.

> 1.   *Legal Standard for Personal Jurisdiction*

A plaintiff must allege sufficient facts in its complaint to make out a *prima facie* case of personal jurisdiction over a defendant.  Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1257-58 (11th Cir. 2010) (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009)).  If the plaintiff makes its *prima facie* showing of personal jurisdiction, the defendant may challenge the allegations of jurisdiction with evidence.  See id.  Upon the defendant's submission of jurisdictional evidence, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction."  Id. (quoting United Techs., 556 F.3d at 1274); accord Meier ex rel. Meier v. Sun Int'l Hotels,

Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002). Where there are conflicts between the evidence, the court makes all reasonable inferences in favor of the plaintiff. Diamond Crystal, 593 F.3d at 1257 (quoting Meier, 288 F.3d at 1269); Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988).

A district court has personal jurisdiction over a nonresident defendant if the exercise of jurisdiction (1) is permitted under the state long-arm statute and (2) does not violate the Due Process Clause of the Fourteenth Amendment. Diamond Crystal, 593 F.3d at 1257-58. In Georgia, the two inquiries are distinct because the Georgia long-arm statute imposes obligations that a plaintiff must establish that are independent of procedural due process requirements. Id. at 1259. To satisfy the Georgia long-arm statute, the plaintiff must establish that jurisdiction is permitted under an express statutory provision, interpreted and applied literally. Id. at 1259 & n.10 (construing Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, 620 S.E.2d 352 (Ga. 2005)). To satisfy the constitutional requirement, the defendant must have "fair warning" of litigation in Georgia by establishing "minimum contacts" with the state. Id. at 1267. If such "minimum contacts" are shown, the defendant can escape the exercise of personal jurisdiction over it only by making "a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." Id. (citing Burger

40

King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985).

      i.      Long-Arm Statute

Georgia's long-arm statute confers personal jurisdiction over non-resident defendants under six circumstances.  See Ga. Code Ann. § 9-10-91.  Plaintiff asserts that Defendants are subject to jurisdiction under the first of these, which provides jurisdiction over a defendant who "[t]ransacts any business within" Georgia.  O.C.G.A. § 90-10-91(1).  This section requires that the defendant have "purposefully done some act or consummated some transaction" in Georgia. Diamond Crystal, 593 F.3d at 1260 (quoting Aero Toy Store, LLC v. Grieves, 631 S.E.2d 734, 736–37 9 (Ga. Ct. App. 2006)).  The defendant's physical presence in the state to perform the act is not required.  Id. at 1264.  A nonresident defendant's "mail, telephone calls, and other 'intangible acts'" that occur outside of Georgia must be examined to determine "whether it can fairly be said that the nonresident has transacted any business within Georgia."  Id.  The defendant, however, must "fairly be said" to have literally "transacted" business in Georgia.  Id.; see also id. at 1264 n.18 ("'Transact' means 'to prosecute negotiations,' to 'carry on business,' 'to carry out,' or 'to carry on.'" (quoting Webster's Third New Int'l Dictionary, 2425 (1993)).  That is, the defendant must have engaged in conduct directed to Georgia and which occurs in Georgia.  See id.

ii.    Due Process

To satisfy the constitutional requirements for the exercise of personal

jurisdiction, a defendant must have "certain minimum contacts with [the forum]

such that the maintenance of the suit does not offend 'traditional notions of fair

play and substantial justice.'"  Diamond Crystal, 593 F.3d at 1267 (quoting

Helicopteros Nacionales de Columbia S.A. v. Hall, 466 U.S. 408, 414 (1984) and

Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  A nonresident defendant

is subject to personal jurisdiction in a state only when "the defendant's conduct and

connection with the forum State are such that he should reasonably anticipate

being haled into court there."  Burger King, 471 U.S. at 474 (quoting World-Wide

Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

"Due process contemplates two types of jurisdiction over the person: general

and specific jurisdiction."  Paul, Hastings, Janofsky & Walker, LLP v. City of

Tulsa, Okla., 245 F. Supp. 2d 1248, 1253 (N.D. Ga. 2002) (citing Helicopteros,

466 U.S. at 414-15).  For general jurisdiction to apply, a nonresident defendant's

"contacts with the forum that are unrelated to the litigation must be substantial," in

the nature of "continuous and systematic general business contacts between the

defendant and the forum state."  Meier, 288 F.3d at 1274.  Specific jurisdiction is

present when the defendant's contacts with the forum state "satisfy three criteria:

42

they must be related to the plaintiff's cause of action or have given rise to it; they must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and they must be such that the defendant should reasonably anticipate being haled into court there." Sloss Indus. Corp. v. Eurisol, 488 F.3d 922, 925 (11th Cir. 2007).

Jurisdiction must also comport with "traditional notions of fair play and substantial justice," which requires consideration of: "(a) the burden on the defendant, (b) the forum State's interest in adjudicating the dispute, (c) the plaintiff's interest in obtaining convenient and effective relief, (d) the interstate justice system's interest in obtaining the most efficient resolution of controversies, and (e) the shared interest of the several States in furthering fundamental substantive social policies." Meier, 288 F.3d at 1276 (citing Burger King, 471 U.S. at 476).

2. *Analysis*

Defendants argue that the allegations that Imagine-Singapore "has an office and, at a minimum, performs accounting and administrative activities in Atlanta, Georgia," (Am. Compl. ¶ 6), and that Imagine-Nevada "conducts at least certain of its business operations in Atlanta," (id. ¶ 10), are not sufficient to demonstrate

personal jurisdiction over these foreign corporations.[22]  Zaller acknowledges in an affidavit that some accounting and administrative duties of both Imagine-Singapore and Imagine-Nevada are managed in Atlanta, (Zaller Aff. ¶¶ 4, 5), but Defendants argue these activities do not constitute sufficient minimum contacts for the exercise of personal jurisdiction.

Plaintiffs again assert that both of these corporations are merely Zaller's alter egos, and argue that because the Court has personal jurisdiction over Zaller, it also has personal jurisdiction over his alter egos.  Plaintiffs contend their alter ego theory is supported by the "Imagine Exhibitions, Inc." website, which shows a map of the world with lines radiating from Atlanta, suggesting Atlanta is the "home base" of all of the various Imagine corporate entities.  (Am. Compl. Ex. A.) Plaintiffs have also alleged that Zaller, a Georgia citizen, "controls and/or owns each of the corporate entities, and has failed to adhere to corporate formalities" and acted on behalf of Imagine-Singapore and Imagine-Nevada.  (Id. ¶¶ 90, 92.) Defendants again object that Plaintiffs have failed to allege sufficient facts supporting their alter ego theory.

---

[22] The Court notes that all of the claims Plaintiffs assert against Imagine-Singapore – for Lanham Act violations, unjust enrichment, and piercing the corporate veil – independently are required to be dismissed.  The Court therefore does not need to consider whether the exercise of personal jurisdiction over Imagine-Singapore is warranted because that Defendant necessarily is dismissed from this action.

Plaintiffs advance an alter-ego theory of personal jurisdiction.  "[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual or a corporation that would not ordinarily be subject to personal jurisdiction in that court when the individual or corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court."  Patin v. Thoroughbred Power Boats, 294 F.3d 640, 653 (5th Cir. 2002) (collecting cases).  An alter ego theory of personal jurisdiction generally "provides that a non-resident *parent corporation* is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction."  Estate of Thomson v. Toyota Motor Corp. Worldwide, 545 F.3d 357, 362 (6th Cir. 2008) (emphasis supplied).  Here, Plaintiffs are asserting a "reverse alter ego" theory, in which a subsidiary corporation would be subject to personal jurisdiction because the controlling parent (in this case, Zaller) is subject to personal jurisdiction.  There is little support in the law for this theory of personal jurisdiction.  See Mewbourne v. Cheytac, USA, LLC, 2013 WL 1346569 (N.D. Ala. Mar. 29, 2013) (noting that, while there is no Eleventh Circuit precedent on the "reverse alter ego" theory of personal jurisdiction, the Tenth Circuit has explained why such an approach is illogical.)  In

Home–Stake Prod. v. Talon Petroleum, 907 F.2d 1012, 1021 (10th Cir.1990), the

Tenth Circuit concluded that a controlling parent's contacts with the forum could

not be imputed to its subsidiaries for personal jurisdiction purposes based on an

alter ego theory:

> When one defendant completely controls another, the latter's
> contacts with the forum may fairly be imputed or attributed to
> the former. . . . In such situations, attribution of contacts to the
> [controlling] individual defendant merely reflects the reality
> that, although the contacts were ostensibly those of the
> corporation, the true actor was the individual. The same
> situation obtains in those cases holding a corporate parent to
> answer for conduct within the forum carried out by an alter ego
> subsidiary.
>
> But the rationale of these cases does not support the proposition
> that, because the court has jurisdiction over a parent corporation
> or dominating individual, without more, it has jurisdiction over
> the alter ego corporation. The dominated corporation does not
> direct and control its dominating corporate or individual alter
> ego.  Accordingly, it is unfair to impute to the dominated
> corporation the forum contacts of its alter ego. . . . [The alter
> ego defendants] have, as much as any other defendant, a
> constitutionally protected liberty interest in not being subject to
> the binding judgments of a forum with which [they have]
> established no meaningful contacts, ties, or relations.

907 F.2d at 1020–21 (internal quotation marks and citations omitted).  The Court

finds this reasoning sound, and rejects Plaintiffs' argument that personal

46

jurisdiction exists over Imagine-Singapore and Imagine-Nevada simply because these entities may be alter egos of Zaller.[23]

Plaintiffs request leave to conduct limited discovery into whether there is an independent basis for the exercise of personal jurisdiction over Imagine-Nevada, the only corporate defendant remaining in this action that is not a Georgia citizen. The Eleventh Circuit recognizes a qualified right to conduct jurisdictional discovery. Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 729 (11th Cir. 1982). "If the jurisdictional question is genuinely in dispute and the court cannot resolve the issue in the early stages of the litigation . . . then discovery will certainly be useful and may be essential to the revelation of facts necessary to decide the issue." Id. at 730 n.7. "Although the plaintiff bears the burden of proving the court's jurisdiction, the plaintiff should be given the opportunity to discover facts that

---

[23] The Court further concludes that Plaintiffs have failed to plead sufficient facts to support their claim that the corporate defendants are Zaller's alter egos. Plaintiffs' conclusory statements that each of the corporate defendants are a "legal fiction," that Zaller "failed to adhere to required corporate formalities," "abused the corporate form," and "does not maintain any distinctions as to these entities functions and operations," are summary allegations and legal conclusions and do not offer well-pleaded facts to support an alter ego theory. See Innotex, 2009 U.S. Dist LEXIS 117992 (N.D. Ga. Dec. 17, 2009). The Court therefore dismisses Count VII (Piercing the Corporate Veil) of Plaintiffs' Amended Complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

would support his allegations of jurisdiction."  Majd-Pour v. Georgiana Cmty.

Hosp., Inc., 724 F.2d 901, 903 (11th Cir. 1984).

      The Court grants Plaintiffs' request for jurisdictional discovery to determine

whether Imagine-Nevada has sufficient contacts with Georgia for this Court to

exercise personal jurisdiction over it.  After this limited discovery concludes,

Defendants may, if appropriate, renew their motion to dismiss Imagine-Nevada for

lack of personal jurisdiction.

      H.     Whether Venue in this Court is Proper

      28 U.S.C. Section 1391 provides

> A civil action may be brought in—
> (1) a judicial district in which any defendant resides, if all defendants
> are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or
> omissions giving rise to the claim occurred, or a substantial part of
> property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought
> as provided in this section, any judicial district in which any defendant
> is subject to the court's personal jurisdiction with respect to such
> action.

28 U.S.C § 1391.  Federal Rule of Civil Procedure 12(b)(3) allows a defendant to

move to dismiss an action for improper venue.  When venue is improper, a district

court shall dismiss the action or "if it be in the interest of justice, transfer such case

to any district or division in which it could have been brought."  28 U.S.C. §

48

1406(a).  "Although the statute speaks only of cases where 'venue' in the original

forum is wrong, it has been held to operate when there exists in the original forum

an obstacle – whether incorrect venue, absence of personal jurisdiction, or both –

to a prompt adjudication on the merits."  Manley v. Engram, 755 F.2d 1463, 1457

n.8 (11th Cir. 1985) (citing Dubin v. United States, 380 F.2d 813 (5th Cir. 1967)).

"[A]n important consideration in deciding appropriate venue is whether a forum

can meet the personal jurisdiction and venue requirements for most or all of the

defendants."  Home Ins. Co. v. Thomas Indus., Inc., 896 F.2d 1352, 1358 (11th

Cir. 1990) (quoting DeLong Equip. Co. v. Washington Mills Abrasive Co., 840

F.2d 843, 857 (11th Cir. 1988)).  Whether to dismiss or transfer is within the

discretion of the Court.  See Pinson v. Rumsfeld, 192 F. App'x 811, 817 (11th Cir.

2006); Naartex Consulting Corp. v. Watt, 722 F.2d 779, 789 (D.C. Cir. 1983).

The Court finds venue in this court to be proper.  Plaintiffs and Defendants

Zaller, TZ, and Imagine-Georgia are all Georgia citizens, and Plaintiffs shall

conduct discovery to determine whether the remaining Defendant, Imagine-

Nevada, is a proper defendant in this action.  Regardless of whether Imagine-

Nevada ultimately remains a party to this lawsuit, venue is proper with respect to

the Georgia parties.  The Court also finds venue to be proper for all Defendants.

28 U.S.C. Section 1391(3).  Defendants' motion to dismiss for improper venue is denied.

## III.    CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiffs' Amended Complaint [24] is **GRANTED IN PART** and **DENIED IN PART**. Defendants' Motion to Dismiss is **GRANTED** on: (i) Plaintiffs' claim for conversion, asserted against Zaller and TZ, (Count I) because it is preempted by the Copyright Act and superseded by the Georgia Trade Secrets Act; (ii) Plaintiffs' claim for unjust enrichment, asserted against all Defendants, (Count III) because it is superseded by the Georgia Trade Secrets Act; (iii) Plaintiffs' claim for piercing the corporate veil, asserted against Imagine-Nevada, Imagine-Georgia, Imagine-Singapore, and TZ, (Count VII) because Plaintiffs failed to adequately and plausibly allege that these entities are alter egos of Zaller; and (iv) Plaintiffs' claim for trade dress infringement against Imagine Exhibitions, PTE, Ltd. for lack of subject-matter jurisdiction.

Defendants' Motion to Dismiss is **DENIED** on the following of Plaintiffs' claims: (i) breach of agreement, asserted against Zaller and TZ, (Count II); (ii) fraudulent inducement, asserted against Zaller and TZ, (Count IV); (iii) trade

dress/Lanham Act violations, asserted against, Zaller, TZ, Imagine-Nevada, and Imagine-Georgia, (Count V); and (iv) misappropriation of trade secrets, asserted against Zaller and TZ, (Count VI).

**IT IS FURTHER ORDERED** that Defendant Imagine Exhibitions, PTE, Ltd. is **DISMISSED** from this action.

**IT IS FURTHER ORDERED** that Plaintiffs may conduct jurisdictional discovery to determine whether personal jurisdiction exists over Imagine Exhibitions, Inc., a Nevada corporation.  Plaintiffs shall have up to and including October 28, 2013, to submit a detailed plan for jurisdictional discovery which provides for such discovery to be concluded on or before November 30, 2013.

**SO ORDERED** this 17th day of October, 2013.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE